Good morning, Your Honors. My name is Morris Hill. I'm representing the Sheriff's Department Defendants Appellants. We are dividing our time so that the sheriffs will take half the 15 minutes and the Lakeside and Santee defendants will take the other half and we'll reserve a little time for rebuttal. Okay, so watch your clock and I'll give you, put seven and a half minutes on the clock. Right, and I'll try to keep it to five. The first issue I'd like to talk about is the first issue in our brief, which is lack of individualized analysis as to each of our 12 defendant appellants. This is problematical not only for attorneys, because it means we have to guess at what to brief on an interlocutory appeal, like okay, as to this defendant, what exactly did the district court have in mind? Why did they think this person was plainly incompetent or knowingly violated the law? It's also a problem for the court because the appellate court has to try to figure out what the district court may have intended. It's also a problem for people who Any person who is in charge of other law enforcement officers is going to want to know that the people under their command are not plainly incompetent or knowingly violating the law. Right, so the district court found that there were questions of fact that precluded making a finding of qualified immunity for everybody. And in reading the facts of this case, it and disputed facts surrounding each of the incidences, any one of which could have led to the excessive force, allegation, or claim. So it may be that the disputed facts are such that you can't identify which individuals until the evidence actually comes in and we have a finding of fact. Well, the door opens with the, at least according to the district court's opinion or ruling, the door opens at the time that the two deputies that first go in want to handcuff Mr. Founsey. That's when everything goes bad. Everything that happens after that somehow is pinpointed back to that one incident. So the question becomes what clearly established law provides that when deputies or law enforcement officers are in close quarters with somebody who is acting irrationally and they don't have any way of knowing what he might do except that he thinks that people are trying to kill him or harm him, can't they handcuff that person for their safety? And where is it clearly established law saying they can't do that? Well, it seems to me, Counsel, there's a preliminary argument to that. In looking at your brief, in one of the headings you talk about there was no individualized consideration of each defendant. Now the argument is not as developed as perhaps as much as it could have been, which is why I think the court asked, sent some citations your guys way. You guys received the order with those cases. It seems to me that before you can even get into whether or not the district court erred on its qualified immunity analysis, we have to see what the district court say about each officer that was sued. And that did not happen here. Is that correct? That is absolutely correct. And that's a big problem for this court. It's also a big problem for us trying to brief this case. The issues that we put on appeal, the ones that come after the number one issue, which is the district court failed to individually consider the individual defendants, all the other issues are to a certain extent guesswork on our part. So instead of doing guesswork, right, because that's, you know, we're not a Colombo up here. Right. It seems to me maybe the better course in this case would be simply to send it back, do nothing more in this case, send this case back to the district court, cite some of these cases that we cited to the parties and say, district court, you need to give us an individualized discussion of why, as to each officer that's been sued in this case. Is that the relief effect? I mean, I know you probably want more relief than that, but lawyers always do. But for now, I take it that would be, if we did that, you would be happy and you'd be good to go. In my dreams, I would like you to affirm, qualify, but as a practical matter, what you have suggested is the, certainly I've read all the cases that went out in that email and they all seem to say about the same thing, which is that if a district court fails to do an individualized assessment of each defendant, the case gets remanded. And indeed, I could point out that your opinion in the SB case did do an individualized assessment of each defendant, which is exactly the correct way to do it. So yes, that being said, and the other thing that would be nice is if the district court had some guidance on, really, you need to rule on objections when people object based upon Rule 56. We were just discussing it, you were just discussing it in another case. That's been a common theme on this calendar. Rule 56C2, which is when you make an objection to evidence, the proponent of the evidence has the burden of showing that it's admissible. And in this case, we not only had reports that at best should be considered like declarations, in which case they should be under personal knowledge and they should be under penalty of perjury. But even beyond that, we've got the Daubert thing because they're expert opinions. And so the expert needs to show his homework, just like an appellate opinion. An appellate opinion doesn't say, I'm a federal judge and it's my opinion that this should be the way it is. You show your homework. You cite cases, you cite your authorities, you say what the basis is for your opinion. And an expert should do at least that much. So, but as an initial matter, do we have jurisdiction over this appeal so that we could even do that? You do. Because the issue is not whether the evidence is substantial enough. The issue is admissibility of evidence. Admissibility of evidence is always going to be a judge question. A Daubert question is a gatekeeper question, which is a judge question by the jury question. And because it's a purely legal question, it's the type of question that you should be considering on appeal. And it would seem even if we get, before we get to the evidentiary question, for us to determine whether we have jurisdiction in this case, we have to know what the district court said about each person. Right. And with that, I will sit down and let the counsel take the laboring order. Good morning. May it please the court. Lee Roystacker. I'm arguing today on behalf of my clients, the City of Santee defendants, and my colleagues' clients, Lakeside Fire Protection and their clients, given the short amount of time. I'm completely on board with the reverse and remand for failure to do any individual I don't think it's reverse and remand. It's just remand. Just remand? Okay. Well, just remand. And the reason being the district court didn't do the individualized assessment for the four paramedics as well. District court also didn't rule on the objections to the expert reports. And at least with respect to my clients, the district court didn't rule on the 14th Amendment loss of familial association claim. So those were some other aspects that the district court didn't cover. But my goal today in the short amount of time that I have is to try to convince this court that it should just reverse, at least to my clients and the Lakeside people, on the issue of qualified immunity. And the reason being is that there is really no need to remand this case for a determination of what each individual paramedic did to answer the question of whether the law was clearly established at the time. In April 2015, under any factual scenario that's fairly presented by the undisputed evidence, the law was not clearly established. Plaintiff below didn't meet the burden of proof to cite a case showing clearly established law, didn't do it here to this court, and frankly can never do it. Because really with respect to the paramedics and the 14th Amendment, it is really essentially a question of first impression. The Supreme Court has never addressed the issue. This court has never addressed the issue. There certainly is no consensus of cases placing the matter beyond debate such that all reasonable paramedics would know two things. One, that paramedic defendants even have a 14th Amendment obligation to provide medical care. And two, whether the particular conduct in this case, or really any conduct, would violate the 14th Amendment. So again, under any factual scenario I think that can be drawn from the record, this court really cannot say that these paramedic defendants were plainly incompetent or knowingly violated the law. If I remember the district court's order, the district court cited three cases. There was a case which involved the police storming the house of a mentally ill man. There was a case, Dior-Lee, which involved a man shot in the face with a bean bag. And there's a case called McGuckin, which is a prisoner not receiving adequate medical care. Were there any cases that I missed involving paramedics? Well, Your Honor, the first two cases that you mentioned... Well, as to the deputies. Right. The second case, McGuckin, or the third case was to the paramedics. The district court didn't cite any others. I will say, either below or in the appellate briefing, there was three cases from out of circuit that were cited that involved paramedics and the 14th Amendment. But they were all under vastly different circumstances. Remember, this circumstance is paramedics are called to a scene to take or to provide medical care to somebody who is not a situation where the paramedics have taken institutionalized or imprisoned or incarcerated or any other sort of personal restraint of liberty that the Due Process Clause is intended to protect. Government abuse of power. Government overreaching. That's not what paramedics do. And the paramedic cases that you just mentioned, which you're saying are not like this case, those were not what the district court relied upon. Correct. Not at all. And I'll save the rest of my time for Rebecca. All right. Thank you, counsel. Good morning, Your Honors. May it please the Court, Brody McBride on behalf of appellees in both cases. This case, Your Honor, is about three sets of defendants that violated certain protocols that were designed specifically to avoid what happened in this case. This appeal is about whether or not those violations, assuming that these defendants violated those protocols, along with other misconduct, was sufficient to put those defendants on notice that their actions at the time violated Lucky Fancy's 14th Amendment right to be free from deliberate indifference. Those three sets of defendants, you have the initial deputies that responded, Collins and Kroll, you have the backup deputies that responded, and then you've got the paramedics. Collins and Kroll, when they responded, violated their protocols in dealing with individuals who are emotionally disturbed. They violated their protocols in insisting on handcuffing and restraining an individual, even though there was no basis to believe he was armed or posed a threat. The backup deputies arrived and violated their protocols in violently restraining an individual without paying attention to whether or not he could breathe. They also repeatedly left him in prone positions. They put the restraints too tight, which didn't allow him to attain full tidal volume breaths, and they didn't adequately monitor him. All of those protocols were designed to specifically avoid what happened in this case. The paramedics as well, when they arrived, violated their specific protocols to give Lucky, patients in Lucky's situation, high flow oxygen, which would have avoided what happened in this case, and to only transport an individual in law enforcement restraints if those restraints are such that the individual can straighten his abdomen and attain full tidal volume breaths. And unless the court has any specific questions, I'd like to address a couple of points raised by the previous. I do have a question for you. So the kind of breakdown you gave us by class of person involved, you mentioned the initial deputies, the backup deputies and the paramedics. Did the district court ever go through the analysis you just described in its order? With regard to qualified immunity, the backup deputies, I think we agree that there was not an individualized analysis. I think the district court believed that this case, as we contend, is just rife with disputes of material fact. But you still have to go through and explain as to each officer, don't you? I mean, you can imagine a case where, let's say there's a riot situation and there are 100 police officers and a plaintiff sues 100 police officers. Do you just get past summary judgment? Could you just say, wow, there's a lot of facts here, this is complicated, and not do an individualized analysis for each officer? Well, the issue on appeal, Your Honor, to address your concern is that I believe the court has in front of it what is necessary to do this analysis. But why shouldn't we be the ones doing it? I mean, you've seen the authority we provided the parties and all these other circuits say, no, you send it back when this happens. Why shouldn't we do that here? Well, I disagree, Your Honor. There were three cases that actually did the review themselves. And in each three of those cases, I believe it was SM, Pollard and Pauls. The court believed it had in front of it what was necessary to do that individualized analysis. In this case, I'm questioning whether we even have jurisdiction because so many facts are in dispute. And in that, under that circumstances we've held, we don't have jurisdiction to review it when the district court finds that there are facts in dispute, precluding the qualified immunity analysis. That's our first argument, Your Honor, under Johnson and the cases that followed after it, that these appeals should be limited to purely legal questions. And if disputes of material fact exist, like the district court found in this case with regard to both prongs of qualified immunity, appeal is inappropriate. But do you know of any authority that would permit us to do that if there's not an individualized breakdown of each officer to make that determination? No, I'm not aware of any authority. Well, beyond the three cases that the court asked us to review and brief for today, SM, Pollard and Pauls, you know, this, our case is strikingly similar. But in all three of those cases, they still, in all of the cases said you have to do an individualized analysis. It may be a debate whether the district court can do it or we can do it. But you agree that all of the cases say there must be an individualized breakdown? Yes, Your Honor, we'd agree with that. And so right now we don't have that, correct? What the court has is, all that's really at issue on this appeal is the second prong of qualified immunity. Right, but, but we don't have that done as to each officer. For example, if we're trying to figure out if it was clearly established to a particular officer, that analysis has not been done officer by officer or paramedic by paramedic. That has not, Your Honor. But given that the court has to assume plaintiff's version of the facts and draw all  The court has in front of it what, what it needs to conduct that analysis as we laid out in our, in our answering brief with regard to the backup deputies, specifically the excerpt of record sites regarding what each one of these individuals did, their participation in the violation of Lucky's constitutional rights. So in terms of the cases we cite, you would want to go down. I think I understand your argument. You're saying, look, it wasn't done, but it can still be done by this court. We don't have to send it back to district court to do that. That's your position. Yes, Your Honor. And actually I would go a step further. I think sending it down to the district court would be, would, there'd be no difference in sending it to the district court to do this analysis. It's going to reach the same result. We believe we've showed sufficient facts or created a sufficient disputed material fact regarding each one of these, these defendants. With regard to the clearly established prong, for the medics, we do think that this is an element of this, this specific tort, coupled with the fact that the obviousness of the serious medical need that Lucky faced and the violating their own protocol actually, in being deliberate and different, we don't think that, we think that qualified immunity is not appropriate, even though there isn't a case exactly on point. And secondly, it's our understanding that a case exactly on point isn't necessary. And to the extent that that's still good law, what we've tried to do is create a body of relevant case law that defines the contours of this right sufficiently that these paramedic defendants would have known at the time that their conduct and being deliberately indifferent to Lucky's serious medical needs violated the 14th Amendment. And in that, we really cited three categories of cases to address Your Honor's concern about whether or not any cases specifically involve medics. There are three cases, out-of-circuit cases, two from the Sixth Circuit and one from the third, dealing specifically with paramedics, holding that paramedics may be held liable for deliberate indifference to the serious medical needs of their patients in their care and custody under the 14th Amendment. That's the Phillips case, the Zaccardi case, and I forget the last case. Counsel, we've been, as a court, we've been whacked by the Supreme Court more than once for relying on kind of general statements of excessive force or deliberate indifference. Do you have anything more specific than just paramedics are held to a certain standard? Well, we do, Your Honor, but the first category will hold that paramedics may be held liable. And the Phillips case is pretty close to this case. That was a case where paramedics were called to a jail to treat a pretrial detainee who was found unconscious. When they arrived, although the individual had regained consciousness, the paramedic failed to follow their own protocol, observed signs of post-cardiac arrest, and failed to follow her own protocol. The court found that that paramedic could be held liable for deliberate indifference under the 14th Amendment. But in addition to that, we have these two categories of cases, the exception to the normal rule that you can't, that there's no duty, affirmative duty to provide medical care under the special relationship exception, and the creation of danger exception. Under the special relationship exception, when state actors restrain an individual such that they're no longer able to care for themselves, they have an affirmative duty not to be deliberately indifferent to their serious medical needs. In the creation of danger exception, when state actors place an individual in a more dangerous situation than they found them, you can also be held liable for deliberate indifference to serious medical needs. So all of these cases taken together, we believe show that individuals in the defendant's shoes at the time, the paramedic's shoes, would have known that given Lucky's obvious signs of cardiopulmonary distress, given their protocols that were designed specifically to avoid what happened here from happening, that this, that would have put them on notice that their actions violated Lucky's constitutional rights. With regard to the paramedic, or I'm sorry, the backup deputies, clearly established cases, we believe we've also established that as well. But the backup deputies were the ones who chased him three times? No, the backup deputies, only one of the backup deputies chased him, Deputy Brooke, while they were restraining him. The backup deputies were the ones that were responsible for tackling him, handcuffing him. There was a number of elbows, knees, punches. They sat on top of him and placed the hogtie restraints on too tightly to the point where he couldn't, he couldn't breathe. They then carried him out by the cord, which they're not supposed to do, and dropped him on his face in the driveway, and left him for up to another five minutes in the prone position. Your descriptions of all of the events that happened here, I think kind of highlight for me how we've got, what, 17 defendants here? Fourteen. Fourteen. All right, so fourteen individuals, they all participated to some degree, but different degrees. Would you agree with that? Yes, ma'am. But you're putting them in three categories. It looks like maybe the district court put them in two categories. Doesn't that all seem like what we really need to do is have somebody go through and conduct an individualized analysis first to even determine what clearly established right was applied to which defendant? I think that, I do think that that analysis is appropriate, but I think that this court is best situated to do that, given the fully developed record. We think that this issue was ripe for this court to resolve. And, you know, in short, Your Honor, to address your point, our contention in this case is essentially that, given the way Mr. Founcey was restrained, this was a case of slow asphyxiation. There were any number of things that could have happened from the point at which the hogtie restraints were placed on him until he went into cardiac arrest in the ambulance that could have avoided what happened. If any of these defendants had followed their protocol, for instance, putting high flow oxygen mask on would have been enough to save him. If they hadn't placed the spit sock on him and would have been able to actually see when he went into cardiac arrest, probably would have been enough to save him. So each of these individuals, while they did have varying degrees of interaction with Mr. Founcey, were all very much responsible for the constitutional violation in his ultimate death. And if the court doesn't have any further questions, thank you. Thank you, counsel. Your Honors, I would like to briefly address Judge Wardlaw's concern about jurisdiction. We, to the extent we could figure out exactly what were the disputed facts in this case, we simply look to what the district court identified in its order. And that's why we quoted the order in our brief. Now, if we accept the district court's identification of disputed facts and say, even on the district court's assumptions, there's no clearly established law that's been violated, then this court does have jurisdiction. This court cannot determine a factual dispute, but as long as the appellant, the officer claiming qualified immunity, is willing to accept the district court's identification of what the officer did, then this court has jurisdiction because then it's a pure question of law. And that's a situation we're facing in this case. We quoted what the district court said. The district court essentially said that the trouble started when they tried to handcuff Mr. Founsey, and the district court then went into a provocation discussion, despite the Mendez opinion from the Supreme Court, which essentially relegated provocation to a very low order of importance. And without even coming up to the level that the former authority in Billington would have required, which is that the provocation has to be an independent constitutional violation, simply said that trying to handcuff Mr. Founsey was the provocation that led to everything else. Can you, could you, do you think you could agree what each specific defendant did or did not do? Well, we could argue about that, but what's important is what the district court identified. Right, but I'm trying to think how I would, if I were having to conduct this individualized analysis from this record, I think I would want some help from the parties about. Well, sure, sure. But what we're dealing with now is what the district court gave us. So if we had that individualized analysis, we'd be in a much better position today to answer the question you just posed. So your bottom line is that some of these defendants might be entitled to qualified immunity and others may not be, depending on their role in the incident. I wouldn't go so far as to concede that they're not all qualified, they're not all entitled to it, but certainly that's true for some of them who are basically just there. Unless they, now, there might be an exception. If a district court were to articulate, for example, some sort of a joint effort theory, but the district court didn't do that. Tasing someone who appears to be going in and out of consciousness would be something that we'd previously found. I mean, we have several taser cases, for example, and this man was tased three times. I don't know who tased him, but, I mean, we do, we have found that to be excessive force. And it's certainly in the record who tased who or who tased Mr. Founsie. And it was more than one officer and it was more than, there was an attempt to tase him in the dark mode, which in one of your opinions was found to be intermediate force. And there was also another deputy who attempted to tase him in the drive stun mode. Now, those are all interesting issues of whether those deputies violated clearly established law under the circumstances that they were facing. And if we had that individualized analysis, we'd be in a much better position to determine whether the applicable law entitled those deputies to qualify the immunity despite that. All right. Well, you're well over your time now, but thank you very much. KJP versus City of Santea et al is submitted. Oh, do you have time left? Wait, you were well over, so they use it way up. Okay. You can come back and say two minutes or no, not two minutes, even. I don't think you really need to speak at all if you want to know the truth, but. All right. Thank you. So the case just heard is submitted.
judges: Wardlaw, Owens, Dorsey